## COLLETT et al. v. GOODRICH

No. 7511. Decided May 16, 1951. (231 P. 2d 730.)

See 37 C. J. S., Frauds, Statute of, Sec. 284. Written contracts, requirements for. 12 Am. Jur., Contracts, Sec. 60.

*Keith Browne, A. W. Watson,* Salt Lake City, for appellant.

*Richard L. Bird, Jr.,* Salt Lake City, for respondents.

WOLFE, Chief Justice.

Action upon an account for merchandise sold and delivered to appellant, Merrill Goodrich, by respondents' assignor, Uinta Oil Refining Company, hereinafter called the Refining Co. Appellant admitted that he owed the Refining Co. some $19,000 for petroleum products sold to him, but counter-claimed for breach of an alleged contract for

the exclusive right to sell the Refining Company's products in the Uintah Basin. From the judgment and order dismissing his counter-claim, appellant appeals.

For several years prior to 1945, appellant distributed gasoline and petroleum products manufactured by the Equity Refining Co. In 1945, the appellant and the respondents purchased this refinery and caused the Uinta Oil Refining Co. to be incorporated. In 1946, the appellant sold his 40% ownership in the Refining Co. to Owen Collett, hereinafter referred to as the respondent, for $25,000. At the trial, appellant testified that at the time of negotiations for the sale of his stock, respondent agreed that the Refining Co. would recognize appellant as the exclusive distributor of the Refining Company's products in the Uintah Basin, i. e., Moffat and Rio Blanco Counties in Colorado and Uintah and Duchesne Counties in Utah. The term of the contract was to be five years. This agreement was verbal. Although promises and attempts were made to reduce the terms of the agreement to writing, a written contract has never been executed. Appellant further testified that he constructed a $44,000 service station to more efficiently distribute the Refining Company's products and argues that he would not have sold his stock nor built the service station, except for the exclusive distributorship. Appellant's counterclaim is based upon the Refining Company's violation of said contract by selling its products to other persons within his territory, and that the profits from said sales would be in excess of the amount of respondents' demand, wherefore he prays that the amount be set off against the account.

The contentions of the parties raise issues which concern pleading the statute of frauds and estoppel. The case was tried in 1949, hence is not governed by our new Rules of Civil Procedure. The appellant's counter-claim stated in general terms that the Refining Company was indebted

to appellant because of the violation of the contract. That the contract was oral, was not mentioned. The answer to the counter-claim merely set up a general denial. The respondent's position is that this oral contract, not to be performed within one year, is within the statute of frauds, Section 33—5—4 (1), U. C. A. 1943.

In *Hargreaves* v. *Burton,* 59 Utah 575, 206 P. 262, 264, 33 A. L. R. 1481, this court stated: "Plaintiff denied the contract as alleged, and thereby invoked the statute of frauds." This conforms to the majority view that a general denial is sufficient to raise the issue of the statute of frauds, 49 Am. Jur. p. 916. The statute of frauds is a defense which may be waived if the party is willing to be bound by the oral contract. But in this case, it was defended upon at the trial, by respondent, and was sufficiently invoked by the plea that appellant had no legally enforceable claim.

As a memorandum of the contract, appellant relies upon the minutes of a meeting of the Board of Directors of the Refining Co., dated February 4, 1946, which state as follows:

"General discussion followed on the dealership of Naples Store of Vernal, Utah [i. e. appellant, Merrill Goodrich] covering Uintah County, Utah. Motion by Owen M. Collett that the Board of Directors of The Uinta Oil Refining Co. enter into a written contract Naples Store granting them exclusive independent dealership in Uintah County, Utah. That Naples will be sold number one burner fuel, Tractor fuel and Diesel fuel at a 2c margin per gallon. And further, that the Uinta Oil Refining Co. will not sell these products to any other independent dealer in Uintah County, Utah. The Uinta Oil Refining Co. reserves the right to sell or deal with any major Oil Company on above mentioned refined products so long as the price is not less than the Quoted price to Naples Store. Seconded by C. L. Collett, Carried."

It is elementary that compliance with the statute of frauds cannot be effected by producing a writing of some contract different from the contract on which the party is basing his claim. Appellant testified at the trial of this case that the exclusive distributorship granted to him by the Refining Co. was to run for five

years; whereas, the writing on which he relies does not mention any time element whatsoever. The minutes of the directors' meeting recite that appellant's profits were to be determined by allowing him a 2c margin per gallon on the Refining Company's products, but appellant testified that the 2c margin "didn't make sense" and that it was not discussed at all, but that the price at which the Refining Co. would sell its products to him was to be based on the current price of crude oil. The area is stated to be Uintah County, whereas appellant contends his territory was to include the entire Uintah Basin. It is apparent that the agreement proposed in the minutes of the Board of Directors is not the same agreement appellant is attempting to establish in this action. For this reason, the minutes are not a memonrandum of the alleged contract.

Appellant submitted a letter written to the Staley Coal Co. by the Refining Co. which merely mentioned that: "* * * We have Merrill Goodrich doing business as the Hi-Way Service * * *" Appellant also relies on a written contract of sale between the Refining Co. and Utah Co-op Association in which the Refining Co. stated it was not legally obligated to sell its products to any one other than Merrill Goodrich and others. Obviously, the letter from the Refining Co. to Staley Coal Co. states nothing which could possibly aid appellant in this action. Even stretching the Staley letter to its furthest implications, there is nothing from which it can be inferred that Merrill Goodrich was doing business under an exclusive distributorship contract. As to the contract between the Refining Co. and Utah Co-op Association, this writing states none of the terms of the alleged contract. It merely states that the Refining Co. is in some manner legally obligated to sell its products to appellant.

The written memorandum which is relied on to satisfy the statute of frauds must contain all the essential terms

and provisions of the contract. *Hawaiian Equipment Co.* v. *Eimco Corp.*, 115 Utah 590, 207 P. 2d 794; *Block* v. *Sherman,* 109 Ind. App. 330, 34 N. E. 2d 951. The memorandum must show what the contract was, and not merely note the fact that some contract was made, *Patterson* v. *Beard,* 227 Iowa 401, 288 N. W. 414, 125 A. L. R. 393. It is obvious that the Refining Co. agreed to, and did sell its products to the appellant. But before the court can assess damages for violations of the alleged contract, it must appear with certainty that appellant was to have an *exclusive* distributorship for the *entire Uintah Basin.* Parol evidence of appellant's objections to sales made by the Refining Co. to other distributors in Colorado does not furnish the necessary evidence (i. e., written memorandum) of the contract to satisfy the statute of frauds. We concur in the conclusions of law dictated by the trial court which state that the evidence shows an agreement which is not to be performed within one year from the making thereof, and is therefore within the statute of frauds.

In his brief, appellant contends that if there is not a sufficient memorandum of the contract, the respondent nevertheless should be estopped from asserting the statute of frauds as a defense. But no estoppel was pleaded. As stated before, the appellant alleged a contract and breach thereof which the respondent generally denied. Thus, the contentions upon which issue was joined did not appear specifically in the pleadings. The designation of the record on appeal contains no pre-trial order.

At page 9 of volume 120 A. L. R., a comprehensive collection of cases sustains the author's conclusion that the majority view requires a party who has the opportunity to do so to specially plead an equitable estoppel. Where the estoppel is not pleaded, it is inadmissible, *Homberger* v. *Alexander,* 11 Utah 363, 40 P. 260; *Berow*

v. *Shields,* 48 Utah 270, 159 P. 538; *Barber* v. *Anderson,* 73 Utah 357, 274 P. 136; *Tracy Loan & Trust Co.* v. *Openshaw Inv. Co.,* 102 Utah 509, 132 P. 2d 388. "The object of the declaration is to give the defendant fair notice of the case he is called into court to meet." *Homberger* v. *Alexander,* supra. [11 Utah 363, 40 P. 262.] Under the circumstances of the instant case, the appellant need not anticipate what defenses were intended to be relied upon, within the plea of general denial, in order to affirmatively plead that respondent is estopped from relying on the statute of frauds, *Wilson* v. *Grey,* 49 Cal. App. 2d 228, 121 P. 2d 514. The statute of frauds is a defense which may be waived if the party desires to stand on the oral contract. It should be expressly and clearly invoked before a pleading of estoppel be required, in order to dispense with the necessity of producing a written contract or a written memorandum thereof. But there was ample opportunity at the trial to amend and plead estoppel, after counsel for the appellant were specifically apprised of respondent's reliance on the defense of the statute of frauds. No amendment was asked, nor did appellant's motion for a new trial mention estoppel. So far as the record shows, it appears initially in appellant's brief.

Although estoppel may be considered for the first time on appeal in some equity cases, *Mason* v. *Ellison,* 63 Ariz. 196, 160 P. 2d 326, the majority view is that the question will not be considered by the appellate court without first having been properly presented to the trial court. Appellant should have requested permission to amend and plead estoppel or it should appear in the pre-trial order. Having failed to do so it is not properly presented for determination.

The judgment is affirmed. Costs awarded to respondent.

WADE, LATIMER, McDONOUGH and CROCKETT, JJ., concur.